### HARDY v. CHANDLER.

(District Court, N. D. Georgia, N. W. D. December 14. 1909.)

#### No. 14.

1. Fraudulent Conveyances (§ 88*)—Mortgages—Description—Change of Securities.

A bankrupt, owning three lots, numbered 650, 719, and 720, respectively, mortgaged part of No. 719 to claimant, and thereafter mortgaged fractional parts of Nos. 650 and 719 to a bank; the deed reciting that it was subject to a security deed theretofore granted to a fractional part of 719 to claimant. Thereafter the bankrupt, claiming that he had mortgaged 719 to claimant by mistake, intending to convey 720 to him, induced him to take up the bank loan, whereupon a new security deed was given to him on No. 720, and the deed of lot 719 was canceled of record. *Held,* that claimant, having voluntarily relinquished his lien on 719, must stand as one having had an antecedent debt without security so far as No. 720 was concerned, and that the latter deed was void in toto as against the bankrupt's creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 230–233; Dec. Dig. § 88.*]

2. Mortgages (§ 77*)—Mistake—Description of Property.

Where a second mortgage on a lot referred to a prior mortgage on the same lot, and recited that the second mortgage was subject to the first, a subsequent claim of mistake as to the lot mortgaged, and that it was intended that the second mortgage should be a first lien on another lot, was unsustainable.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 176; Dec. Dig. § 77.*]

In the matter of the bankruptcy of J. B. Morgan & Bro. Petition by Wilson M. Hardy to set aside a preference granted to W. E. Chandler. Granted.

Davis & Lovvorn and Lipscomb, Willingham & Doyal, for petitioner. John W. & J. E. Maddox, for defendant.

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

NEWMAN, District Judge. The petition in this case presents the following situation: On May 2, 1906, J. B. Morgan, one of the bankrupt firm of J. B. Morgan & Bro., borrowed from W. E. Chandler $500, and gave three notes, two for $200 each and one for $100, due in one, two, and three years, respectively. To secure this loan he made a mortgage on a piece of real estate which was described as:

"That portion of lot of land known as No. 719 lying and being in the eighteenth district and third section of Polk county, Georgia, situated south of the East & West Railroad, containing 33 acres, more or less, with all the rights and privileges thereunto belonging."

Morgan owned another lot in the same location, No. 720, and of about the same value as 719. On July 12, 1907, J. B. Morgan executed to the Rockmart Bank a security deed, the consideration being $1,200, to fractional parts of lots Nos. 650 and 719, containing together 51¾ acres, more or less. This deed recited that it was subject to a security deed theretofore made by J. B. Morgan to Chandler, to secure a loan, to a fractional part of lot No. 719. In the early part of 1908 Chandler agreed with Morgan to cancel his lien on lot 719 and take a security deed to lot 720. Consequently Morgan executed a deed to Chandler to a fractional part of lot No. 720 to secure the original loan of $500 and interest thereon and also $65 additional, which had been loaned by Chandler to Morgan in June, 1907, making the total amount secured by this last deed to lot No. 720 $641.16.

The transaction with reference to this second security deed or mortgage is about this, according to the testimony of Chandler: He was at work, when Morgan came to him and told him that he (Morgan) owed the Rockmart Bank $1,200, and asked Chandler if he had the money to lend him to take up that paper. Chandler told him he thought he had. Morgan then told him he would show him what sort of a paper the bank had. Soon after, probably the next day, Morgan brought the bank's paper to Chandler and showed it to him, and Chandler looked at it. It was at night. While Chandler was looking over the paper of the Rockmart Bank, he remembered his own paper had the same number of lot, and he told Morgan, "I already have this lot number," and Morgan expressed suprise, and Chandler said, "Yes, I have got the same number," and Morgan said, "Well, it is a mistake, you have got the wrong number," and asked Chandler if he would correct it. Morgan said the bank would ruin him for giving the second mortgage on the same lot without telling them. Chandler then agreed not only to correct the mistake, but to take up the bank's paper also. This was during the panic in the winter of 1907–08, and Chandler found that he could not borrow any money from the bank, and, indeed, could not get his own money out. Afterwards a new security deed was given, as stated above, on lot No. 720, and the security deed to Chandler on lot No. 719 was taken up and canceled on the records.

This last security deed was given within four months of the filing of the petition in bankruptcy by J. B. Morgan & Bro. There is testimony on the part of Chandler to the effect that when he took the first security deed he thought he was taking the deed on lot No. 720, instead of No. 719. The trustee in bankruptcy brought suit to set aside

the second mortgage or deed as a preference, and the special master to whom it was referred has reported in favor of setting it aside and that the property be decreed to be the property of the trustee. It is sought, however, to support the deed for this new transaction on the ground that it was made to render effective that which had been the real intent of the parties when the first paper between Morgan and Chandler was made.

A very interesting question is thus presented. Of course, there can be no doubt as to the right of a mortgagee or pledgee to have a change of security, provided the estate of the bankrupt for administration and for distribution to his general creditors is not diminished thereby. If Chandler had retained his lien on lot No. 719, from the testimony as to the value of the lot (about $800), the amount that could have been realized from the sale of the lot would have been more than absorbed by the Chandler debt and the debt to the bank; but lot No. 720 would have been left free for the benefit of the general creditors. After the Chandler lien was taken off of lot No. 719, the bank's security became a first lien, and that would have absorbed the whole of the amount that could have been realized from lot 719; for, according to the testimony of Chandler, lot No. 650, which, in addition to lot No. 719, was covered by the security deed to the bank, was not worth much. So the party really benefited by this transaction was the bank, which got the benefit of the withdrawal from lot No. 719 of Chandler's mortgage for $500 and interest. That which really injured the general creditors and would cause their dividends to be diminished is the mortgage on lot No. 720; lot No. 719 being already more than covered by liens and lost to them in any event. Certainly Chandler was no better off after the second mortgage was given than he was before, and there can be no question but that the general creditors were worse off than they were before.

There are two or three singular things in this case, and one is that Morgan should have been apprehensive about the bank prosecuting him criminally for giving them a mortgage on property already mortgaged, when the security deed which he made to the bank recited on the face of it that it was subject to a prior security deed to chandler. Another singular thing is that he should have expressed to Chandler his surprise that Chandler had a deed to lot No. 719, when he had not only given the deed to lot No. 719, but had recited in his deed to the bank the fact that Chandler did have this prior security. In view of all this, it is singular that Morgan could say that he intended to give, and thought all the time that he had given, Chandler a deed to lot No. 720 as security, and that he still believed, after the foregoing occurred, that he had lot No. 720 as security.

In view of all the foregoing, it seems clear that Chandler, under all the circumstances of this case, must stand in the position of one who had an antecedent debt without security, so far as lot No. 720 is concerned. He voluntarily relinquished his lien on lot No. 719, which lien was created more than four months before the bankruptcy proceedings, and which must have been held to be perfectly valid in every way, and then took a lien on lot No. 720, thereby withdrawing from the property for the benefit of general creditors lot No. 720, to the ex-

tent of the amount of his lien. Beyond all question the lien on lot No. 720 must fail as to the $65 added thereto by the paper executed in January, 1908, and I think it fails also as to the entire amount.

The important question on this branch of the case to me was whether Chandler had a reasonable cause to believe that the bankrupt was insolvent. No question is made, as I understand it, that he was insolvent; but the question is whether Chandler knew it, or had reasonable cause to believe it to be true, and to believe that a preference was intended. The special master, who heard all the testimony, has found that he did have reasonable cause, under all the facts and evidence, to so believe, and, under the evidence, the court would not be justified in setting aside his finding in this respect.

The effort to support this last transaction, wherein this security was given on lot No. 720, on the ground that it was only to rectify an error which occurred when the original transaction was entered into, and to carry into effect what the parties then really intended, must also fail. It is entirely clear to my mind that there was no mutual mistake as to the lot on which the deed was originally given. If there was a mistake on the part of Morgan as to the lot of land originally conveyed to Chandler as security, there must have been a similar mistake when he gave the second mortgage or deed to the bank, because of his recital in that paper to the bank that Chandler had a prior lien.

The whole transaction is complicated, and it is far from clear what the rights of the parties are; but I think it should be disposed of in accordance with what is stated above, and that results in the confirmation of the report of the special master.

A decree may be taken in accordance therewith.